IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

|  |  |  |
|---|---|---|
| PURITA CROSBY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CORECIVIC,<br><br>　　　　Defendant. | | Case No. 2:20-cv-02847-TLP-tmp |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
AMENDED COMPLAINT**

For its Answer to Plaintiff PuRita Crosby's ("Plaintiff") Amended Complaint, Defendant

CoreCivic[1] ("Defendant" or "CoreCivic"), through the undersigned counsel, hereby states as

follows:

**ANSWER[2]**

Defendant admits that in her first unnumbered paragraph Plaintiff purports that she was

discriminated against because of her race[3] and was "subsequentially [sic] given the choice to resign

---

[1] Plaintiff has mistakenly named "CoreCivic" as the defendant in this action, as no such legal entity exists.  CoreCivic of Tennessee, LLC is a Tennessee limited liability corporation with its headquarters located in Brentwood, Tennessee and was Plaintiff's employer.

[2] Defendant submits this Answer subject to and without waiving its objection that Plaintiff's Amended Complaint fails to comply with the Court's Order Setting Aside Judgment and Granting Leave to Amend.  *See* Order at *3–4, ECF No. 13.  Specifically, the Court ordered Plaintiff to amend her complaint to include all claims in one document, list each claim for relief in a separate count and identify each defendant sued in that count, and allege enough facts to support each claim in the text of the amended complaint.  *Id.*  Nevertheless, Plaintiff's Amended Complaint fails to include any separate claim for relief in a separate count, nor does it identify any specific defendant against whom the (unidentified) claim is asserted.

[3] Plaintiff's initial complaint included a Title VII claim and an age discrimination claim under the Age Discrimination in Employment Act ("ADEA").  *See* Complaint ¶ 1, ECF No. 1; Order at *1, ECF No. 13 ("Plaintiff sued pro se alleging Defendant Core Civic violated Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act.").  Plaintiff has not alleged, asserted, or otherwise discussed an age discrimination claim, pursuant to the ADEA or any other

or to take a staff nurse position at another Core Civic facility after having served as the top health administrator of the West TN Detention Facility in Mason TN." Defendant denies the remaining allegations of this unnumbered paragraph and further denies any wrongdoing.[4]

Defendant admits the following allegations:

### A.    <u>Plaintiff's Employment History, Job Responsibilities and Training</u>

Plaintiff was hired on July 30, 2018 to replace Thomas Corman (a white male, age 43) as the Health Services Administrator ("HSA") at the West Tennessee Detention Facility ("WTDF")—a secure detention facility that operates under contracts with the United States Marshals Service ("USMS"), the Federal Bureau of Prisons, and the Department of Homeland Security. The HSA is a critically important role within the facility's medical department. Among other duties, the HSA manages the facility's medical program activities and provides overall direction and leadership to medical department personnel in compliance with all applicable policies, procedures, laws, regulations, and standards. The HSA also monitors contractual services related to inmate medical care. In addition, the HSA assists in the formulation of facility policy through the interpretation, enforcement, and adherence to policies, procedures, and/or contract requirements. Plaintiff remained in the HSA role until April 4, 2019, when she resigned.

Plaintiff was hired as the HSA based on her superior qualifications and the belief that she would be able to elevate the function of the medical department overall. Plaintiff had a Master's

---

law, in her Amended Complaint. *See generally* FAC, ECF No. 14. Accordingly, Plaintiff has waived any such claim by omitting it from the operative pleading. *Thurman v. Yellow Freight Systems, Inc.*, 97 F.3d 833, 835 (6th Cir. 1996) (holding that an issue not squarely presented to the district court is waived).

[4] Defendant objects to this paragraph and the entirety of the other paragraphs contained in the Amended Complaint, as they fail to comply with Federal Rule of Civil Procedure 10(b), which requires a party to "state [her] claims . . . in numbered paragraphs, ***each limited as far as practicable to a single set of circumstances***." As Plaintiff's Amended Complaint does not comply with this Federal Rule, no specific response to any of the paragraphs contained therein is required.

Degree in Public Health, a Bachelor's Degree in Organizational Leadership, and prior experience as an HSA and a Charge Nurse in correctional settings.  The consensus view was that Plaintiff had the requisite skills and experience necessary to identify and implement the changes required to improve the overall operation of the WTDF medical department.  Plaintiff began her employment as an HSA at an annual salary in excess of what Mr. Corman was making.

<b>B.</b>      <b><u>Plaintiff's Unsatisfactory Job Performance and Ultimate Resignation</u></b>

a.    <u>Continuing Concerns with the Medical Department under Plaintiff's Direction</u>

From the beginning of Plaintiff's tenure as the HSA, she struggled to maintain, much less improve, the operation of the WTDF medical department.  In fact, within approximately five months of the time Plaintiff assumed the HSA role, the USMS representative responsible for monitoring contract compliance related to medical services had made multiple (over 20) inquiries and complaints related to the operation of the medical department and the delivery of medical services.  Based on the number and frequency of notices received from the USMS, CoreCivic was justifiably concerned that Plaintiff was struggling to adequately perform as an HSA.

b.   <u>Plaintiff's Performance Improvement Plan</u>

In an effort to address the customer's concerns and help Plaintiff improve performance, on December 27, 2018, Health Services Regional Director Mary Price ("Ms. Price," an African-American, female, age 55) developed a Performance Improvement Plan ("PIP") designed to address the specific areas of concern identified by the customer.  Specifically, Ms. Price identified three areas of concern: Communication – Plaintiff had not established critical lines of communication with staff necessary to relay new and ongoing information; Follow Up on Clinic Issues – Plaintiff was unable to consistently report the status of issues within the medical department requiring close monitoring and follow-up; and, finally, Meeting Deadlines – Plaintiff

3

struggled with completing required customer reports in a timely manner and with providing timely responses to the USMS reports and notifications of medical treatment concerns. The PIP provided Plaintiff with specific steps to follow in order to achieve improvement and required that Plaintiff have a weekly review with Ms. Price for a period of three months.

Despite implementation of the PIP, the USMS representative reported additional concerns about the medical department, expressed continuing disappointment in Plaintiff's performance as an HSA, and indicated that there was low confidence in Plaintiff's ability to perform as an HSA.

c.    Plaintiff's Administrative Leave

On or about January 24, 2019, CoreCivic placed Plaintiff on administrative leave for approximately one week pending investigation of additional customer reports regarding her performance. Ultimately, Warden John Jackson ("Warden Jackson," an African-American male, age 47) agreed to place Plaintiff on paid administrative leave while the USMS determined whether Plaintiff would be allowed to remain at WTDF as the HSA.[5]  On or about February 4, 2019, Plaintiff returned to WTDF as an HSA so that she could complete the PIP in the hope that she would be able to elevate her performance to an acceptable level. However, between February 4, 2019 and March 20, 2019, the USMS submitted at least two additional reports of unacceptable services: the first indicating dental services standards were not being met; the second indicating a failure to properly administer medication.

d.    Plaintiff's Resignation

On or about March 20, 2019, Warden Jackson and Ms. Price met with Plaintiff. Health Services Managing Director Stephen Baxley, Jr. participated by telephone. The purpose of the meeting was to discuss Plaintiff's performance and her failure to improve despite efforts that had

---

[5]  Under the terms of their contract, the USMS had authority to approve all staff who work with or have contact with federal detainees.

4

been made to identify areas of improvement necessary to meet performance expectations. Although Plaintiff had not met the expectations of her position at WTDF, CoreCivic still had confidence that Plaintiff was a talented medical professional, and someone that would be a valuable member of a medical team under the right circumstances. Therefore, she was offered the opportunity to transfer to another facility in the role of Registered Nurse ("RN"). Plaintiff refused the opportunity for transfer. Instead, she submitted her resignation on March 20, 2019. CoreCivic paid Plaintiff through April 4, 2019. At no point during her employment did Plaintiff avail herself of any one of the multiple options available to file a grievance or submit a complaint to CoreCivic alleging that the customer representative who made multiple reports about her performance and her management of the medical department had engaged in any inappropriate conduct or that he or anyone else at WTDF was treating her in a discriminatory, retaliatory, or inappropriate manner.

Defendant responds to Plaintiff's further allegations as follows:

1. Defendant admits that WTDF is managed and operated pursuant to federal contracts to provide among other things, detention services for individuals charged with federal offenses under the custody of the USMS. The applicable contracts speak for themselves. Except as expressly admitted herein and above, Defendant denies the allegations of Paragraph 1 of the Amended Complaint.

2. Except as expressly admitted herein and above, Defendant is without sufficient knowledge or information to admit or deny the allegations of Paragraph 2 of the Amended Complaint, and therefore denies the same.

3. Defendant admits that within approximately five months of the time Plaintiff assumed the HSA role, the customer representative responsible for monitoring contract compliance related to medical services (i.e., a USMS representative) had made multiple (over 20)

inquiries and complaints related to the operation of the medical department and the delivery of medical services. These concerns were documented through memoranda sent to Plaintiff. Based on the number and frequency of notices received from the USMS, CoreCivic was justifiably concerned that Plaintiff was struggling to adequately perform as an HSA and placed her on a PIP. Despite implementation of the PIP, the USMS reported additional concerns about the medical department, expressed continuing disappointment in Plaintiff's performance as an HSA, and indicated that there was low confidence in Plaintiff's ability to perform as an HSA. Plaintiff was ultimately placed on paid administrative leave while the USMS determined whether Plaintiff would be allowed to remain at WTDF as an HSA. Plaintiff was allowed one last opportunity to complete her PIP, but two additional reports of unacceptable services were lodged: the first indicating dental services standards were not being met; the second indicating a failure to properly administer medication. Except as expressly admitted herein, Defendant is without sufficient knowledge or information to admit or deny the allegations of Paragraph 3 of the Amended Complaint, and therefore denies the same.

4. Defendant is without sufficient knowledge or information to admit or deny the allegations of Paragraph 4 of the Amended Complaint, and therefore denies the same.

5. Defendant admits that Plaintiff was placed on a PIP based on the number and frequency of notices Plaintiff received from the USMS. Ms. Price, an African-American female, age 55, developed the PIP to address the specific areas of concern identified by the USMS. Specifically, Ms. Price identified three areas of concern: Communication – Plaintiff had not established critical lines of communication with staff necessary to relay new and ongoing information; Follow Up on Clinic Issues – Plaintiff was unable to consistently report the status of issues within the medical department requiring close monitoring and follow-up; and, finally,

6

Meeting Deadlines – Plaintiff struggled with completing required customer reports in a timely manner and with providing timely responses to the USMS reports and notifications of medical treatment concerns. The PIP provided Plaintiff with specific steps to follow in order to achieve improvement and required that Plaintiff have a weekly review with Ms. Price for a period of three months. Except as expressly admitted herein, Defendant is without sufficient knowledge or information to admit or deny the allegations of Paragraph 5 of the Amended Complaint, and therefore denies the same.

6.     Defendant admits that Plaintiff was placed on a PIP based on the number and frequency of notices Plaintiff received from the USMS. Ms. Price, an African-American, female, age 55, developed the PIP to address the specific areas of concern identified by the USMS. Specifically, Ms. Price identified three areas of concern: Communication – Plaintiff had not established critical lines of communication with staff necessary to relay new and ongoing information; Follow Up on Clinic Issues – Plaintiff was unable to consistently report the status of issues within the Medical Department requiring close monitoring and follow-up; and, finally, Meeting Deadlines – Plaintiff struggled with completing required customer reports in a timely manner and with providing timely responses to the USMS reports and notifications of medical treatment concerns. The PIP provided Plaintiff with specific steps to follow in order to achieve improvement and required that Plaintiff have a weekly review with Ms. Price for a period of three months. Except as expressly admitted herein, Defendant is without sufficient knowledge or information to admit or deny the allegations of Paragraph 6 of the Amended Complaint, and therefore denies the same.

7.     Defendant admits that, although Plaintiff failed to meet the performance expectations as an HSA at WTDF, it still had confidence that Plaintiff was a talented medical

professional, and someone that would be a valuable member of a medical team under the right circumstances. Therefore, she was offered the opportunity to transfer to another facility in the role of an RN. Plaintiff refused the opportunity for transfer. Instead, she voluntarily submitted her resignation on March 20, 2019. Except as expressly admitted herein, Defendant is without sufficient knowledge or information to admit or deny the allegations of Paragraph 7 of the Amended Complaint and therefore denies the same.

Defendant admits that in her final unnumbered paragraph Plaintiff purports that "there are multiple more instance [sic] of the discrimination I faced including being constantly reported to the assistant warden in challenges of my authority as H.S.A. (a white male at the time), and the majority of my white nurses leaving when we were critically short staffed, and being allowed to return when the department was succeeding and more favorably staffed." Defendant denies the allegations of this unnumbered paragraph and further denies any wrongdoing

## RESPONSE TO PRAYER FOR RELIEF

Defendant denies all allegations set forth in Plaintiff's final three paragraphs of the Amended Complaint and specifically denies that Plaintiff is entitled to any relief whatsoever from Defendant.

## GENERAL DENIAL

Defendant denies any and all allegations set forth in the Amended Complaint that are not specifically admitted herein.

## AFFIRMATIVE DEFENSES

Defendant hereby asserts the following defenses to the claims and allegations set forth in the Amended Complaint. By asserting these defenses, Defendant does not admit that it bears the burden of proof or the burden of persuasion with respect to any particular defense.

8

**FIRST AFFIRMATIVE DEFENSE**

The Amended Complaint, and each and every cause of action therein, fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

Upon information and belief, Plaintiff has failed, refused, and/or neglected to mitigate or avoid the damages complained of in the Amended Complaint, if any.

**THIRD AFFIRMATIVE DEFENSE**

Upon information and belief, Plaintiff's alleged damages, if any, are attributable in whole or in part to Plaintiff's own conduct and/or the conduct of other persons or entities beyond the control of Defendant and not to the action or inactions of Defendant, its employees, agents, or representatives.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are or may be barred, in whole or in part, by the applicable statutes of limitations.

**FIFTH AFFIRMATIVE DEFENSE**

Upon information and belief, Plaintiff's claims are barred, in whole or in part, from recovery of any damages due to the doctrines of waiver, release, collateral estoppel, equitable estoppel, administrative estoppel, judicial estoppel, unclean hands, mistake, laches and/or failure to do equity.

**SIXTH AFFIRMATIVE DEFENSE**

Upon information and belief, Plaintiff's claims are barred, in whole or in part, because any acts or omissions giving rise to this action were done in good faith and with reasonable grounds for believing that the acts or omissions, if any, were not in violation of any law.  Any acts were

9

taken with honesty of purpose; were not outrageous, malicious, egregious; made with improper motive, hatred, ill will, malice, reckless indifference, disregard, or intent to injury; and were not made in bad faith which bars any recovery of punitive, liquidated, or exemplary damages by Plaintiff.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred or limited by her failure to exhaust her administrative remedies and/or comply with the statutory prerequisites to suit.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred, in whole or in part, to the extent they exceed the scope of or are inconsistent with the charge of discrimination she filed with the EEOC.

## NINTH AFFIRMATIVE DEFENSE

All events which occurred more than one hundred eighty (180) days prior to the filing of Plaintiff's EEOC Charge are untimely and may not be asserted in this action.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because even if any actions were taken based on alleged discriminatory reasons, Defendant would have reached the same decision absent an unlawful motive and based upon legitimate, non-discriminatory factors.

## ELEVENTH AFFIRMATIVE DEFENSE

To the extent applicable, Defendant exercised reasonable care to prevent, investigate, and correct promptly any alleged discriminatory behavior, and Plaintiff unreasonably failed to avail herself of Defendant's preventive or remedial apparatus.

## TWELFTH AFFIRMATIVE DEFENSE

Defendant is not responsible under the doctrine of *respondeat superior* for the acts of its employees.  To the extent that Plaintiff alleges unlawful acts of co-workers, such were acting outside the scope of their authority, and thus, Defendant is not liable for any alleged wrongful conduct.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred, in whole or in part, or recovery substantially limited, by the doctrine of after-acquired evidence.

## FOURTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff's claims involve the loss of retirement plan benefits or credits, health and welfare benefits, or any other benefits covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 101 *et seq.*, such claims are preempted by ERISA.

## FIFTEENTH AFFIRMATIVE DEFENSE

The Amended Complaint and/or the relief requested therein is barred, in whole or in part, because the Plaintiff failed to take appropriate steps to seek relief through internal procedures or avoid harm otherwise.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims, in whole or in part, are offset by any earnings, severance pay, unemployment compensation, and any other pay or benefits as provided by law.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's own actions, misconduct and/or failure to follow Defendant's policies, procedures, and work requirements.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Any award of punitive or liquidated damages in this case would violate the due process and equal protection guarantees, and other substantive and procedural safeguards afforded to Defendant by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and/or by similar provisions of the Tennessee Constitution.

## NINETEENTH AFFIRMATIVE DEFENSE

The Amended Complaint, and each and every cause of action set forth therein, fails to properly state a claim upon which prejudgment interest may be awarded, as the damages claimed are not sufficiently certain to allow an award of prejudgment interest.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to a jury trial as to equitable relief such as attorney fees, reinstatement or front pay.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendant did not employ Plaintiff.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Defendant reserves the right to assert any additional defenses that may arise as discovery progresses or otherwise in the course of litigation.

## PRAYER FOR RELIEF

WHEREFORE, Defendant prays for judgment as follows:

1.     That Plaintiff take nothing from Defendant by reason of her Amended Complaint and that judgment be rendered in favor of Defendant;

2.     For dismissal of the Amended Complaint, with prejudice;

3.      For recovery of its reasonable costs and fees in defense of Plaintiff's Amended

Complaint; and

4.      For such other and further relief as the Court may deem just and proper.

DATED:      September 3, 2021

*/s/ C. Celeste Creswell*
C. Celeste Creswell
BPR No. 018305
ccreswell@kcozlaw.com
**KABAT CHAPMAN & OZMER LLP**
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333

*Counsel for Defendant*

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of September, 2021, I electronically filed the foregoing **DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF filing system, which will send a copy to all counsel of record.  In addition, a copy of this Answer has been served via First Class U.S. Mail, postage prepaid, upon the following:

PuRita Crosby
4835 Seed Tick Road
Lakeland, TN 38002


/s/ C. Celeste Creswell
C. Celeste Creswell
*Attorney for Defendant*

14